# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ARTHUR TAYLOR, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:14CV00641 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **PULLIAM, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Arthur Taylor, Jr., Pro Se Plaintiff; Margaret Hoehl O'Shea, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for the Defendants*

Arthur Taylor, Jr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983,[1] alleging that two correctional officers at Green Rock Correctional Center used excessive force against him during a strip search in August 2014. The defendants have filed a Motion for Summary Judgment supported with affidavits. Taylor has responded to the defendants' motion with a Motion for Leave to Submit an Amended Complaint, adding new defendants and claims of supervisory liability and deliberate indifference regarding medical care. I will grant Taylor's motion, but after considering his Amended Complaint and the record, I conclude that the defendants' Motion for Summary Judgment must be

---

[1] Petitioner originally filed his action in the United States District Court for the Eastern District of Virginia. It was transferred here because the prison where the cause of action arose is located in this district.

denied. I also conclude that I must summarily dismiss all of Taylor's new claims, except his allegation that Officer Fuller, rather than Officer Henderson, used excessive force against him on August 3, 2014; and his claims that Dr. Wang was deliberately indifferent to his medical needs related to injuries he suffered during that altercation.

I.

In his Complaint, Taylor sues Officers Pulliam and Henderson, alleging as follows:

> On 8-3-14 I was being strip searched after my visit by C.O. Pulliam and C.O. Henderson. During aforesaid search, C.O. Pulliam was tossing my clean clothes in the floor, which was dirty. I requested that he not throw my clothes in the floor of the bathroom and he responded, "I'll do what I want to." I was stripped to my socks and boxers. Then C.O. Pulliam threw my jeans on the floor. I picked them up and stated that "I'll just write this up." I was immediately assaulted by officers Pulliam and Henderson. Both twisted my arms behind my back, one of which had recently been broken, of which the officers were aware of. I was shoved, head first, into the cinder block wall. I fell to the floor where I was hand-cuffed. I was forced onto my back, severely injuring my arm again. On the way to medical, I passed out from my concussion suffered from my head injury. My arm was gouged in eleven places because excessive force was used. I was still bleeding when I arrived in medical and for several days afterward. On the day of the attack, I was in medical for 5 hours for treatment. I was there for three days and nights while "under investigation." Pictures were taken of my injuries by Captain Northrup and Internal Affairs. I was released without charge because I did not violate any rules. . . . I am 73 years old and this attack was totally unprovoked.[2]

---

[2] Taylor also alleged, "I ask[ed] for access to a magistrate to file charges and I was denied. . . . I intend to pursue charges against these officers for assault and battery,

(Compl. 4, ECF No. 1.) As relief, Taylor seeks $100,000.00 in damages per defendant.

Defendants' evidence in support of their Motion for Summary Judgment[3] offers a different version of events. Pursuant to Green Rock policy, after visitation, each inmate must undergo a strip search and have his clothing searched to ensure that he has not received contraband from a visitor. Officers take each inmate to a restroom, which contains a plastic chair for the inmate to sit on and a green mat which keeps the inmate's bare feet and clothes from contacting the floor.

Officers Pulliam and Fuller escorted Taylor to the restroom for a strip search after his visit on August 3, 2014. Taylor sat in the chair and removed his shirt. While Pulliam was examining the shirt for contraband, Taylor "became very argumentative about his clothes being placed on the mat." (Pulliam Aff. ¶ 6, ECF No. 12-1.) He wanted to hold them in his hand, which is not permitted. He was "cursing loudly and becoming belligerent," and visitors in the nearby visitation area could hear his "obscenities." (*Id.*) As Pulliam was searching Taylor's pants

---

malicious wounding and conspiracy." (Compl. 4, ECF No. 1.) He does not allege facts showing that any of the defendants was personally involved in the alleged denial of access to a magistrate, however. Therefore, this claim will be dismissed without prejudice.

[3] Defendants' evidence consists of affidavits from Defendants D. Pulliam and B. Henderson, Officer S. Fuller, and Nurse, C. Mayes, who reviewed and attached copies of Taylor's medical records related to the incident on August 3, 2014.

pockets, Taylor "jumped up and grabbed the pants out of [his] hands." (*Id.*) Taylor was "flailing his arms and his disruptive behavior continued to escalate," so the officers "placed him against the restroom wall so that [they] could control his behavior and place him in handcuffs." (*Id.*)

The officers ordered Taylor to put his arms behind his back to be cuffed, and he did so with his right arm, but kept his left arm between the wall and his body. The officers repeatedly ordered Taylor to present that arm to Pulliam, but Taylor did not comply and continued to be "argumentative and confrontational." (Fuller Aff. ¶ 7, ECF No. 12-3.) Pulliam "took Taylor's left bicep in [his] left hand and used [his] right hand to secure Taylor's left wrist," and then was able to position Taylor's arm behind his back so the officers could apply the handcuffs. (Pulliam Aff. ¶7.) The officers next "placed" Taylor on the floor and Pulliam radioed for assistance. (Fuller Aff. ¶¶ 7-8.) In response, Officers Young and Henderson and Sgt. Crane reported to the restroom, to find Taylor, dressed in his pants, handcuffed, and sitting in the chair. (Id. ¶¶ 8-9.)

At this point, Fuller noticed blood on Taylor's arm, so he and Young escorted Taylor to the medical department. On the way, Taylor yelled to other inmates that staff had beaten him. When Taylor suddenly stopped walking and sat down, another officer brought a wheelchair for him. Officers Pulliam and Fuller deny that Officer Henderson participated in the strip search and assert that they

used only the amount of force necessary to secure Taylor's arm after he refused to comply with orders to position himself to be handcuffed.

According to medical records, Nurse Gilbert, who examined Taylor in the medical unit on August 3, noted an abrasion on the left side of his forehead, with no active bleeding. She also noted 7 skin tears along his left arm, which she cleaned and bandaged.[4] Taylor was then placed on medical observation and prescribed Ibuprofen for 5 days. When Jones redressed Taylor's left arm injuries a few hours later, she noted that he complained of pain along his entire left arm and severe pain in his left wrist. Jones referred him to see the doctor. Dr. Wang examined Taylor the next morning, noted 8 small abrasions on his left arm, and ordered a topical antibiotic dressing. A nurse checked on Taylor at 9 p.m. that evening and noted no complaints of pain or signs of distress.

On August 5, at 11:40 a.m., Nurse Gilbert examined Taylor. She noted 11 small superficial abrasions on his left upper and lower arm, which she cleaned and bandaged. She noted no active bleeding or signs of infection. She also cleaned the raw area on Taylor's forehead and applied a band-aid. The next entry in Taylor's medical records is dated October 1, 2014, when he had a chronic care follow-up appointment for other medical issues. Dr. Wang noted that Taylor complained of a

---

[4] Nurse Mayes states that "[o]ffenders who are at an advanced age, such as Taylor, are more likely to experience skin tears. As an individual ages, [his] skin becomes more fragile and delicate and easily tears." (Mayes Aff. ¶ 11, ECF No. 12-4.)

history of headaches from an injury at Greensville Correctional Center in 2010, and complained of pain in his left forearm and some dizzy spells when walking. The doctor made some changes to his medications and renewed them for six months. The medical note from this October 1, 2014, examination also indicated: "(L) wrist splint on." (Mayes Aff. 7, ECF No. 12-4.)

In Taylor's Amended Complaint, he agrees with the defendants' evidence that Officer Henderson did not participate in handcuffing him on August 3, 2014. However, he renews his claim alleging that Pulliam used excessive force against him on August 3, 2014.[5] Taylor also adds Officer Fuller as a defendant to his claim and asserts that these officers' actions constituted assault and battery under state law and a violation of his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.[6] (Amend. Compl. ECF No. 25-2.) Taylor describes himself here as a 73-year-old man who has signs of dementia; two hiatal

---

[5] Because Taylor is proceeding pro se, I will consider his factual allegations in the original Complaint as part of his statement of his excessive force claims, insofar as those allegations are not inconsistent with the Amended Complaint.

[6] *See* 42 U.S.C. § 12132 (ADA) and 29 U.S.C. § 794 (Rehabilitation Act). Taylor also asserts that Pulliam and Fuller somehow violated his rights to adequate medical care and due process. However, Taylor does not explain, and I cannot conceive of, any such claims arising from Taylor's allegations concerning these defendants. *See, e.g. Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (finding court "cannot be expected to construct full blown claims from sentence fragments"); *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993) (finding court need not construct pro se plaintiff's legal arguments for him). Therefore, I will dismiss such claims without prejudice.

hernias protruding from his stomach; a broken left wrist (that has been broken for 4 ½ years from a fall that also caused him to be knocked out causing a head injury), and bowl movement disorders.  (*Id.* 6.)

Liberally construed, Taylor's Amended Complaint also adds the following claims against new defendants:  Warden Manis and "senior security staff" failed to take disciplinary or other actions to curb the known pattern of physical abuse of inmates;[7] Warden Manis, Special Agent Craig O'der, Maj. Meyer, and Sgt. Crane conducted a faulty investigation of the August 3 incident and found that the actions of Pulliam and Fuller were justified; and "the medical department defendants subjected [Taylor] to a denial of meaningful medical care, for [his] broken, painful wrist reinjury, and [his] painful untreated hernias, and head injury," in violation of the Eighth Amendment, the ADA and the Rehabilitation Act (*Id.* ¶ 46).[8]  As relief in this lawsuit, Taylor seeks monetary damages.[9]

---

[7]  The term "senior security staff" apparently refers to these defendants, first named in the Amended Complaint:  Maj. Meyer and Sgt. Barry Crane.

[8]  The term "medical department defendants" apparently refers to these defendants, first named in the Amended Complaint:  Patricia Jones, R.N.; Dr. Wang; John Doe (Green Rock medical administrator); and C. Mayes, R.N.

[9]  In the Amended Complaint, Taylor also sought declaratory and injunctive relief directing that prison officials transport him to a hospital for examination by specialists to diagnose and provide surgery and therapy for his several medical conditions.  On December 24, 2014, however, the court received notice that Taylor had been transferred to Deerfield Correctional Center.  Because the defendants in this lawsuit no longer have any responsibility for Taylor's medical care, his claims for injunctive relief against them must be dismissed as moot.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991)

II.

A.  Defendant Henderson.

As stated, Taylor now agrees that Officer Henderson did not use excessive force against him during the search on August 3, 2014, and omits him as a defendant in the Amended Complaint.  Therefore, I will dismiss all claims as to this defendant and direct the clerk to terminate him as a party.

B.  Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence."  *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *see also Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) (at this stage of the proceedings, "[i]t is not [the court's] job to

---

(finding that prisoner's transfer rendered moot his claims for injunctive and declaratory relief, but not his claims for monetary damages).

weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe").

Defendant Pulliam moves for summary judgment as to Taylor's excessive force claim. "[O]nly the unnecessary and wanton infliction of pain" rises to the level of an Eighth Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citations omitted). The court conducts an objective inquiry — whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry — whether a specific prison official "act[ed] with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted).

The objective component of an excessive force claim focuses on "the nature of the force," which must be "nontrivial," *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and can be met by "the pain itself, even if an inmate has no enduring injury." *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (internal quotation marks and citations omitted). The subjective component focuses "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the

threat reasonably perceived by the officers, and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

The type and extent of the injury the inmate suffered is relevant to the objective and subjective facets of the analysis: as a factor in determining "whether the use of force could plausibly have been thought necessary in a particular situation" and as "some indication of the amount of force applied." *Wilkins*, 559 U.S. at 37 (internal quotation marks and citations omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency [and the Eighth Amendment] always are violated." *Hudson*, 503 U.S. at 9.

Under these principles, I cannot find that Pulliam is entitled to summary judgment. Taking Taylor's allegations as true, he is a fragile older man with an already injured arm and other major health difficulties, who merely asked the officers to keep his clothes off the dirty floor; when the officers refused, he picked up his pants with his one uninjured arm and threatened to write a complaint about the incident. Yet, without further provocation, the officers allegedly shoved Taylor against the wall, and Pulliam physically twisted his already injured arm behind his back, causing him to fall to the floor where the officers handcuffed him and forced him to his back. Taylor alleges that as a result of the altercation, he suffered a reinjury to his left wrist, a concussion which caused him to pass out on the way to

the medical unit, and eleven gouges in his arm that continued to bleed for several days.

Defendant Pulliam contends that Taylor presented a security threat, because he was verbally disruptive, did not follow officers' orders, and might have had contraband in his pants. Pulliam also contends that the officers used only as much force as needed to restore order and that the injuries to Taylor's arm were minor and occurred only because his aged skin was thin and easily broken.

While Pulliam may convince a jury to agree that he and Fuller did not use excessive force, I cannot so find at this stage of the proceedings. I find genuine issues of material fact in dispute as to Taylor's behavior, the degree of threat the officers reasonably could have perceived from the circumstances, the need for force, the relationship between the need for force and the amount of force applied, and the extent of Taylor's injuries from the incident. A reasonable jury could resolve these disputes so as to return a verdict in Taylor's favor on his claim of excessive force.[10] Accordingly, I cannot grant summary judgment for Defendant Pulliam on this claim.

---

[10] Based on these material factual disputes, I also find no merit to Pulliam's assertion that he is entitled to summary judgment on the ground of qualified immunity on this claim. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995) (finding that when resolution of qualified immunity question and plaintiff's claim itself depends upon determining what happened, summary judgment on qualified immunity grounds is not proper).

C.  The Amended Complaint.

When "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court shall screen his complaint and, "as soon as practicable," dismiss "any portion of the complaint" that "is frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(a)-(b)(1).  In so doing, the court must liberally construe pro se pleadings, take all facts pleaded as true, and draw all reasonable inferences in the plaintiff's favor. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).  The court need not, however, accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim may be dismissed under § 1915A(b)(1) as frivolous if it is "based on an indisputably meritless legal theory."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (applying former version of statute).  A contention may be dismissed under this section for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Jehovah v. Clarke*, No. 13-7529, 2015 WL 4126391, at *9 (4th Cir. July 9, 2015) ("Dismissal of [plaintiff's] claim [under § 1915A(b)(1)] is not appropriate

unless he has failed to present factual allegations supporting a plausible claim to relief." (citing *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).)

### 1. Excessive force by Defendant Fuller.

The Amended Complaint substitutes Defendant Fuller as the officer who assisted Pulliam in searching Taylor after his visit on August 3, 2014, and in acting together with Pulliam to place Taylor against the wall and then on the floor. I find that this claim against Fuller survives screening under § 1915A(b)(1). Because Taylor could prove an Eighth Amendment, excessive force claim against Pulliam based on this alleged conduct, I will also allow Taylor's amended claim of excessive force to go forward as to Fuller. By separate order I will direct the clerk to attempt service of the Amended Complaint on Fuller.

### 2. ADA and Rehabilitation Act Claims.[11]

Taylor's amended claims alleging that the defendants have somehow violated his rights under the ADA and the Rehabilitation Act must be summarily dismissed under § 1915A(b)(1) as legally frivolous. Even if Taylor could somehow raise an ADA or Rehabilitation Act claim concerning the use of force

---

[11] The elements of an ADA and Rehabilitation Act claim are largely identical: "In general, a plaintiff seeking recovery for violation of either statute must allege that (1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). Due to the similarities between ADA and Rehabilitation Act claims, the Court will simply use "ADA" to refer to both types of claims.

incident or his medical care thereafter, I conclude that he has no cognizable claim for damages under these statutes against any of the defendants he has named. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (holding that ADA does not recognize cause of action for damages against governmental employees in their individual capacities); *see also* 42 U.S.C. § 12132 (providing a remedy only against a "public entity"); *McNulty v. Bd. of Educ. of Calvert Cty.*, No. Civ.A. DKC 2003-2520, 2004 WL 1554401, at *6 (D. Md. July 8, 2004) ("As with Title II of the ADA, Section 504 of the Rehabilitation Act 'does not permit actions against persons in their individual capacities.'") (quoting *Baird*, 192 F.3d at 472). Therefore, I will dismiss as frivolous all claims under the ADA and the Rehabilitation Act.[12]

---

[12] In any event, Taylor has no actionable ADA claim against any defendant. Even if he could prove that any one or more of his medical problems rise to the level of a disability entitling him to the protections of the ADA, his allegations do not implicate those protections. Taylor does not allege exclusion from any program or denial of any benefit that the prison provided, or state facts suggesting that his disability was a motivating factor in the use of force against him so as to constitute discrimination actionable under the ADA. Similarly, his allegations of inadequate medical care do not give rise to any cognizable ADA claim, because they do not suggest any discrimination because of a disability. *See, e.g., Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [the plaintiff] was not treated worse because he was disabled. . . . The ADA does not create a remedy for medical malpractice.").

### 3. Supervisory Liability and Investigation Claims.

In a § 1983 case, a supervisory official cannot be held vicariously liable under the doctrine of respondeat superior for constitutional violations committed by his subordinates. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Taylor may establish supervisory liability only if he states facts showing personal fault on the part of each defendant, either (a) based on the defendant's personal conduct, or (b) based another's conduct in execution of the defendant's policies or customs or with the defendant's tacit authorization. *See Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

The "tacit authorization" theory of liability focuses on information known to a supervisor *before* an incident occurs. *See Shaw v. Stroud*, 13 F.3d 791, 798-800 (4th Cir.1994). Specifically, "[a] supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014).

Taylor alleges, generally, that Warden Manis and his chief security officers, Maj. Meyer and Sgt. Crane, knew of past, similar incidents when officers had used excessive force, so these supervisors should be liable for the actions of Pulliam and Fuller. However, Taylor does not describe any such prior incident known to these

-15-

specific supervisory officers that would have put them on notice of a risk that Pulliam and Fuller would, similarly, apply excessive force to Taylor.

Taylor cannot survive screening under § 1915A(b)(1) by merely reciting the elements of the tacit authorization theory or by making a conclusory statement that Manis, Meyer, and Crane knew of a pattern of behavior. *Iqbal*, 556 U.S. at 678. He must also present facts in support of this conclusory assertion, and he has failed to do so, even after engaging in discovery. Because Taylor's Amended Complaint does not contain sufficient factual matter to state a plausible claim that such a pattern of behavior existed or that these defendants knew of and tacitly authorized such behavior, I must summarily dismiss Taylor's supervisory liability claims against Manis,[13] Meyer, and Crane.

Taylor's claim asserting deficiencies in officials' investigation of the August 3, 2014, incident must also be dismissed. Taylor has not identified, nor do I find, any constitutionally protected right for an inmate to have his complaint of excessive force officially investigated or to have the allegedly offending officers disciplined or criminally charged. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding individual has no constitutional right regarding criminal

---

[13] Taylor also alleges that Warden Manis denied him "meaningful access to the grievance procedures." (Am. Compl. 14.) Because inmates do not have a constitutionally protected right to a grievance procedure or meaningful participation in such procedures, *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), this allegation fails to state any cognizable claim under § 1983 against the warden.

prosecution or non-prosecution of another person); *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (finding that inmates had no constitutional claim based on magistrate's refusal to issue requested criminal warrant charging guards with assault). Therefore, I must summarily dismiss Taylor's claims concerning the adequacy of the investigation.

### 4. Medical Claims.

Deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment ban on cruel and unusual punishment and is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*overruled on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

A prison official is deliberately indifferent only if he was personally aware of facts indicating an "excessive risk to inmate health or safety," actually recognized the existence of such risk, and disregarded or responded unreasonably to that risk. *Farmer*, 511 U.S. at 837. A defendant's "knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a

prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citation omitted).

"[A]n inadvertent failure to provide adequate medical care" does not amount to the deliberate indifference required to prove a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Similarly, the deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'" *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)).

In his Amended Complaint, relying in part on the medical records the defendants provided, Taylor presents the following allegations related to his medical care after the August 3, 2014, incident. Nurse Jones, who first examined Taylor, allegedly stated that "his injury was minor and pre-existing," referring to Taylor's fall months earlier, which had allegedly resulted in a broken left wrist and a head injury. Jones was allegedly aware of, but "ignored Taylor's cries of severe pain" from the re-injury to his wrist,[14] made no record of these conditions in the

---

[14] Taylor also complains about his hernias. Yet, he admits that he had been provided a hernia belt for this condition and does not allege that he informed Nurse Jones or Dr. Wang that the hernias had been affected by the August 3 encounter with Pulliam and Fuller. Therefore, I cannot consider this condition to be part of his claims concerning the injuries related to that incident.

nursing notes, and did not have him sent to the hospital. (Amend. Compl. 9, ECF No. 25-2.)

Dr. Wang, who examined Taylor on August 4, 2014, allegedly knew Taylor had broken his wrist in the earlier fall and had re-injured it in the incident with Pulliam and Fuller;[15] yet, Dr. Wang "did <u>NOTHING</u> in having [Taylor] sent to the hospital to fix [his] broken wrist." (*Id.* 10) (emphasis in original.) Taylor alleges that Dr. Wang and the Green Rock medical administrator are "responsible . . . for arranging for specialized medical care outside of the prison," such as having Taylor's broken wrist fixed and having his head injury evaluated. (*Id.*) As a result of the defendants' alleged failure to provide appropriate medical care, Taylor alleges that his wrist causes him "severe pain" and interferes with his sleep and daily activities, and he "consistently get[s] headaches." (*Id.* at 11.)

Even taking the evidence in the light most favorable to Taylor, I cannot find that he has stated facts on which he could persuade a jury that Nurse Jones acted with deliberate indifference to his serious medical needs. The medical records indicate that after Jones' first evaluation of Taylor's condition on August 3, she cleaned the abrasions on his arm and forehead, provided him with pain medication, and placed him in the infirmary for observation. At her second evaluation, when Taylor complained of severe pain in his left wrist, Jones referred him to see the

_____

[15] According to the medical notes in the record, Taylor underwent an X ray of his left wrist and abdomen on July 23, 2014, before the encounter with Pulliam and Fuller.

doctor, which he did the next day. While Taylor may disagree with the specific medical notes Jones made or believe that she should have characterized his injuries as an emergency before the doctor evaluated him, such disagreements do not implicate the Eighth Amendment. Taylor has not shown that Jones ignored any injury related to his encounter with Pulliam and Fuller. Therefore, I will summarily dismiss Taylor's claims against Nurse Jones under § 1915A(b)(1) for failure to state a claim. I will also summarily dismiss Taylor's claims against Nurse Mayes and the medical administrator, as he does not allege facts showing that these defendants had any personal knowledge of his medical needs or any personal involvement with his medical care in August 2014.

Taking Taylor's allegations about Dr. Wang as true, however, I find that this claim survives screening under § 1915A. A factfinder could reasonably infer that on August 4, 2014, from Nurse Jones' notes about Taylor's complaints of severe pain in his left wrist and the prior notes about a wrist X ray, Dr. Wang knew that Taylor might have reinjured his wrist in the altercation with Pulliam and Fuller. Again, on October 1, Dr. Wang noted Taylor's complaint of headaches and wrist pain, but did not provide treatment for these maladies, from which a factfinder could infer deliberate indifference. Therefore, I will not summarily dismiss Taylor's claims against Dr. Wang under § 1915A(b)(1), and will direct the clerk to attempt service of process against this defendant in the usual manner.

III.

   In conclusion, I will deny defendant Pulliam's Motion for Summary Judgment and allow Taylor to proceed with his claims in the Amended Complaint that Pulliam and Fuller used excessive force against him and committed assault and battery on August 3, 2014.  I will summarily dismiss Taylor's remaining claims in the Amended Complaint, however, under § 1915A(b)(1), as frivolous or as failing to state any claim cognizable under § 1983, with the exception of his claim against Dr. Wang for deliberate indifference to Taylor's serious medical needs after the excessive force incident.

   A separate Order will be entered herewith.

                              DATED:  August 18, 2015

                              /s/  James P. Jones
                              United States District Judge